## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| CLAIRE E. HAWKSLEY, | : | CIVIL ACTION No. 04-CV-1305 (KAJ) |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| UNUM LIFE INSURANCE COMPANY OF AMERICA, et al. | : | |
| | : | |
| Defendant. | : | |

**DEFENDANT'S OPENING BRIEF**
**IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**
**<u>AND/OR JUDGMENT THROUGH A NON-JURY DETERMINATION</u>**

Dated: July 25, 2006

STEVENS & LEE

By: _____

    Walter P. McEvilly, Jr.
    Attorney I.D. 0660
    Kirk L. Wolgemuth
    Attorney Pa. I.D. 45792
    1105 North Market Street
    Suite 700
    Wilmington, DE 19801
    (302) 425-3300

Attorneys for Defendant
Unum Life Insurance Company of America

# TABLE OF CONTENTS

I. STATEMENT OF THE NATURE AND STAGE OF PROCEEDINGS ...................................1

II. SUMMARY OF ARGUMENT ........................................................................................1

III. STATEMENT OF FACTS .............................................................................................2

IV. ARGUMENT...............................................................................................................10

    A. THE COURT SHOULD REVIEW UNUM'S DECISION UNDER THE
       ARBITRARY AND CAPRICIOUS STANDARD OF REVIEW. ................................13

       1. The Plan Administrator Had The Necessary Discretion To Require
          Deferential Review......................................................................................................13

       2. Pinto v. Reliance Does Not Justify A Significant Departure From Deferential
          Review Here.................................................................................................................15

    B. THE COURT SHOULD AFFIRM THE DENIAL OF PLAINTIFF'S CLAIM
       BECAUSE UNUM DID NOT ABUSE ITS DISCRETION BUT INSTEAD
       RENDERED A REASONABLE DECISION.................................................................18

    C. PLAINTIFF HAD, AT LEAST, THE CAPACITY TO PERFORM SOME OF
       THE DUTIES OF HER OCCUPATION AND, THEREFORE, NO BENEFITS
       ARE PAYABLE..............................................................................................................24

    D. THE SOCIAL SECURITY DECISION IS NOT DETERMINATIVE...........................25

V. CONCLUSION...............................................................................................................28

SL1 649303v1/010305.00179

# TABLE OF AUTHORITIES

## CASES

Abnathya v. Hoffman-La Roche, Inc.,
    2 F.3d 40 (3rd Cir. 1993) .......................................................................10, 13, 14, 20, 28

Anderson v. Liberty Lobby, Inc.,
    477 U.S. 242 (1986)................................................................................................10

Anderson v. Operative Plasterers' and Cement Masons' Int'l Assoc. Local No. 12
    Pension and Welfare Plans,
    820 F. Supp. 384 (C.D. Ill. 1992) .......................................................................29

Block v. Pitney Bowes, Inc.,
    952 F.2d 1450 (D.C. Cir. 1992)............................................................................27

Celotex Corp. v. Catrett,
    477 U.S. 317 (1986)................................................................................................10

Cerneskie v. Mellon Bank Long Term Disability Plan, 142 Fed. Appx. 555, 557 n.2 (3d
    Cir. 2005).................................................................................................................20

Chandler v. Raytheon Employees Disability Trust,
    53 F. Supp. 2d 84 (D. Mass. 1999) ................................................................26, 27

Chandler v. Underwriters Labs., Inc.,
    850 F. Supp. 728 (N.D. Ill. 1994) .......................................................................28

Cini v. Paul Revere Life Insurance Co., 50 F. Supp. 2d 419 (E.D. Pa. 1999) 50 F. Supp.
    2d at 420..................................................................................................................26

Cox v. Mid-America Dairymen, Inc.,
    965 F.2d 569 (8th Cir. 1992) ................................................................................26

Crespo v. UNUM Life Insurance Co. of America,
    2003 WL. 22967245 (ND. ILL Dec. 18, 2003) ..........................................11, 12

DeWitt v. Penn-Del Directory Corp.,
    106 F.3d 514 (3d Cir. 1997)..................................................................................13

Donaho v. FMC Corp.,
      74 F.3d 894 (8th Cir. 1996) .................................................................13

Doyle v. Paul Revere Life Ins. Co.,
      144 F.3d 181 (1st Cir. 1998).................................................................26

Etkin v. Merck & Co.,
      No. 00-5476, 2001 U.S. Dist. LEXIS 17692 (E.D. Pa. October 30, 2001) ......................21

Fergus v. Standard Ins. Co.,
      27 F. Supp. 2d 1247 (D. Or. 1998) .................................................................20

Firestone Tire and Rubber v. Bruch,
      489 U.S. 101 (1989).................................................................10, 12, 13, 14

Forchic v. Lippincott, Jacobs & Gruder,
      No. 98-5423 (JBS), 1999 U.S. Dist. LEXIS 21419 (D. N.J. Nov. 29, 1999), aff'd
      sub nom., Forchic v. Standard Ins. Co., No. 99-6132, 2001 U.S. App. LEXIS
      6303 (3d Cir. March 27, 2001) .................................................................22

Grossman v. Marriott International, Inc., 144 Fed. Appx. 233, 2005 U.S. App. 14685 at
      4-5 .................................................................17

Harris v. FMC Corp.,
      Civ. No. 1:90-CV -1992.................................................................26

Hess v. Hartford Life & Accident Ins. Co.,
      274 F.3d 456 (7th Cir. 2001) .................................................................11

Hlinka v. Bethlehem Steel Corp.,
      863 F.2d 279 (3rd Cir. 1988) .................................................................28

Holmes v. Pension Plan of Bethlehem Steel,
      2000 U.S. Dist. LEXIS 6733 (E.D. Pa, May 4, 2000), aff'd in part and rev'd in
      part, 213 F.3d 124 (3d Cir. 2000) .................................................................14

Hoover v. Metropolitan Life Ins. Co.,
      2006 U.S. Dist. LEXIS 5481 (E.D. Pa Feb. 14, 2006) ...................................13, 14, 17, 21

Keating v. Whitmore Manufacturing Co.,
      186 F.3d 418 (3d Cir. 1999).................................................................11

Knabe v. Boury Corp.,
      114 F.3d 407 (3d Cir. 1997).................................................................10

Krawczyk v. Harnischfeger Corp.,

SL1 6
SL1 649303v1/010305.00179

41 F.3d 286 (7th Cir. 1994) ........................................................................13

Lasser v. Reliance Standard Life Insurance Co.,
    344 F.3d 381 (3d Cir. 2003), cert. den., 158 L. Ed. 2d 963 (2004) ..................................18

Luby v. Teamsters Health Welfare and Pen. Trust Funds,
    944 F.2d 1176 (3d Cir. 1991)..........................................................................14

Marx v. Meridian Bancorp,
    2001 U.S. Dist. LEXIS 8655 (June 21, 2001, E. D. Pa.), aff'd, 2002 U.S. App.
    LEXIS 5277 (3d. Cir. March 27, 2002), cert. denied, 537 U. S. 885 (200)......................13

Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,
    475 U.S. 574 (1986)........................................................................................10

Mitchell v. Eastman Kodak Co.,
    113 F.3d 433 (3rd Cir. 1997) ...............................................................13, 28

Moats v. United Mine Workers of Am. Health and Retirement Funds,
    981 F.2d 685 (3d Cir. 1992)..........................................................................13

Nichols v. Verizon Communications Inc., 78 Fed. Appx. 209 (3d Cir. 2003) .............................21

Orvosh v. Program of Group Insurance for Salaried Employees of Volkswagen of
    America, Inc., 222 F.3d 123 (3d Cir. 2000)................................................14, 21

Pagan v. The NYNEX Pension Plan,
    846 F. Supp. 19 (S.D.N.Y. 1994), aff'd., 52 F.3d 438 (2nd Cir. 1995)............................26

Paramore v. Delta Air Lines, Inc.,
    129 F.3d 1446 (11th Cir. 1997) ....................................................................29

Pinto v. Reliance Standard Life Ins. Co.,
    214 F.3d 377 (3d Cir. 2000)....................................................15, 16, 17

Pokol v. E. I. DuPont De Nemours and Co., Inc.,
    963 F. Supp. 1361 (D. N.J. 1997) ........................................................26, 27

Quinn v. Blue Cross and Blue Shield Assoc.,
    990 F. Supp. 557 (N.D. Ill. 1988), rev'd in part on other grounds, 161 F.3d 472
    (7th Cir. 1998)...............................................................................................26

Russell v. Paul Revere Life Ins. Co.,
    288 F.3d 78 (3d Cir. 2002)..................................................................22, 23, 24

(iv)

Russell v. The Paul Revere Life Ins. Co.,
  148 F. Supp. 2d 392 (D. Del. 2001), aff'd, 288 F.3d 78 (3d Cir., 2002) ........................ 17

Sapovits v. Fortis Benefits Ins. Co.,
  No. 01-3628, 2002 U.S. Dist. LEXIS 24987 (E.D. Pa. Dec. 30, 2002) ........................... 21

Scarinci v. Ciccia,
  880 F. Supp. 359 (E.D. Pa. 1995) ........................................................................... 27

Shiffler v. Equitable Life Assur. Soc'y of the U.S.,
  838 F.2d 78 (3d Cir. 1988) .................................................................................... 13

Sommer v. Prudential Ins. Co., 138 Fed. Appx. 426 (3d Cir. 2005) ............................................ 22

Steele v. The Boeing Company,
  399 F. Supp. 2d 628 (E.D. Pa. 2005) ...................................................................... 21

Stratton v. E.I. DuPont De Nemours & Co.,
  363 F.3d 250 (3d Cir. 2004) .............................................................................. 17, 21

Tesche v. Continental Cas. Co., 109 Fed. Appx. 495, 497-498 (3d Cir. 2004) ........................... 21

The Black & Decker Disability Plan v. Nord,
  538 U.S. 822 (2003) ....................................................................................... 20, 27

Wilkins v. Baptist Healthcare System, Inc.,
  150 F.3d 609 (6th Cir. 1998) ................................................................................ 11

## STATUTES

Fed. R. Civ. p. 52(a) .......................................................................................... 10

Fed. R. Civ. p. 56 ............................................................................................. 12

Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001-1461 .......... 1

ERISA, 29 U.S.C. § 1132(a) (1) (B) ...................................................................... 12, 13

## I. STATEMENT OF THE NATURE AND STAGE OF PROCEEDINGS

This case involves a claim for long-term disability ("LTD") benefits under an employee welfare benefit plan regulated by the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001-1461. Plaintiff's Complaint should be dismissed because the denial of her claim for benefits was neither arbitrary nor capricious. The Court should therefore enter judgment in favor of the Defendant Unum Life Insurance Company of America ("Unum").

As outlined below, Unum is entitled to summary judgment because the decision to deny Plaintiff's claim was neither arbitrary nor capricious. In the alternative, because the record is limited to the administrative record, the Court can enter judgment through a non-jury determination (thereby avoiding any inferences or other procedural requirements imposed by Fed. R. Civ. P. 56).

## II. SUMMARY OF ARGUMENT

The Court should enter judgment for Unum because the denial of Plaintiff's benefits was reasonable and neither arbitrary nor capricious. The termination of benefits was supported by the administrative record and the opinions of competent independent medical professionals and should be affirmed by this Court.

The arbitrary and capricious standard of review applies because Unum had the discretion to determine whether plaintiff was eligible for benefits under the plan. Plaintiff claimed she was disabled as a result of nausea, headaches and the symptoms associated with a cerebrovascular accident ("CVA"). A CVA is an acute neurological injury to the brain because the blood supply is blocked. An ischemic stroke occurs when a blood vessel becomes occluded.

However, Unum's physicians reviewed all the medical evidence and determined that Plaintiff was capable of sedentary to light work and could perform her own job as a systems analyst.

This thorough analysis by Unum's experts confirmed that there was insufficient evidence to support restrictions or limitations that would prevent her from performing the duties of her own occupation as a result of these conditions. In fact, Plaintiff had worked for over 30 years with complaints of severe headaches and over 11 months with complaints of nausea. The CVA occurred months before she stopped working on July 30, 2002 and subsequently relocated to her beach home. Unum concluded that the CVA did not create restrictions that prevented her from working. Simply put, Unum determined that here was no change in her medical condition that caused her to stop working. Accordingly, Unum's decision was reasonable and should be upheld.

## III. STATEMENT OF FACTS

### The Plan

Plaintiff seeks long-term disability ("LTD") benefits under an ERISA welfare benefit plan (the "Plan") established by Plaintiff's former employer, Christiana Health Care. The Plan was insured through a group LTD policy issued by Unum.

Several provisions of the Plan are particularly relevant to this motion. One of the critical Plan provisions concerned Unum's discretionary authority to determine claims and whether that discretion was sufficient to trigger application of ERISA's arbitrary and capricious standard of review. In fact, the Plan provided Unum with the express discretionary authority to determine eligibility for benefits. [App. Ex. A, pp. 11, 36].

Another significant Plan provision concerns the definition of disability which is based on the inability to perform one's own occupation. After two years of benefits, however,

the definition changes and disability is determined based on an inability to perform any gainful occupation for which he is reasonably fitted by education, training or experience. Here, Plaintiff's claim was denied during the "own occupation" period and there was no exhaustion of administrative remedies regarding the issue of whether Plaintiff was disabled under the "any occupation" standard; therefore, the "any occupation" issue is not before the Court.

Finally, the Plan contemplates that a plan participant may have certain restrictions and limitations yet still retains partial work-capacity. Thus, the Plan provides that benefits will end "during the first 24 months of payments, when you are able to work in your regular occupation on a **part-time basis** but you choose not to...." (App. Ex. A, p. 24(emphasis in original)).

### Plaintiff's Claim

Plaintiff claims she was disabled as a result of headaches, nausea, and symptoms from a CVA. Yet Plaintiff suffered from headaches for over 30 years and apparently had a mild CVA in late 2001 or early 2002. [Appendix[1] ("App.") Exhibit B, Bates pp. 118-120, 137-178, 310-312]. Further, at the time Plaintiff stopped working, her headaches were reasonably controlled. (App. Ex. B, pp. 323-324, 278).

Plaintiff was employed by Christiana Care as a systems analyst. Plaintiff began working for Christiana Care on March 23, 1998. (App. Ex. B, p. 455). A systems analyst uses current system and computer technology and designs, installs and ensures continuing operation of systems and all functional areas. (Ex. B, p. 354).

Plaintiff has a long history of being able to work despite complaints of anxiety, depression and bad headaches. (App. B, Bates pp. 280-297). On November 12, 2000, Plaintiff

3

had a CT scan of her brain because of her complaints of headaches. The scan showed no evidence of acute intercranial hemorrhage. (App. Ex. B, p. 258).

In January of 2001, Plaintiff began treating with K. Alvin Lloyd, M.D. for her headaches. (App. Ex. B, pp. 310-312). Dr. Lloyd concluded that Plaintiff has daily headaches with migrainous features. (Id.). Dr. Lloyd prescribed additional medications and a change of medications in an attempt to control her headaches. Dr. Lloyd's recommendations helped, because on March 1, 2001, when Plaintiff returned for her visit with Dr. Lloyd, she reported that her headaches were much better and that she went five days without any headaches. (App. Ex. B, p. 313). On her return to Dr. Lloyd on April 30, 2001, Plaintiff's headaches improved again. Plaintiff reported two episodes of ten days without any headaches. (App. Ex. B, p. 315). On July 30, 2001, Plaintiff described her headaches as okay and noted the development of a tremor. (App. Ex. B, p. 317). On October 2, 2001, Plaintiff's headaches were reported to be under reasonable control and the essential tremor was improved with Nadolol. (App. Ex. B, p. 319). On November 27, 12001, Plaintiff reported severe headaches in the prior month, but admitted that her headaches were more controlled now than she has enjoyed in many months. (App. Ex. B, p. 320).

On May 29, 2002, Plaintiff again saw Dr. Lloyd. At that time, she decided to not initiate therapy for the essential tremor because, in her opinion, her headaches were considered to be the greater problem. (App. Ex. B, pp. 323-324). By June 7, 2002, Dr. Coniglio reported that Plaintiff felt wonderful. (App. Ex. B, p. 278). On July 2, 2002, Plaintiff reported to Dr. Lloyd that the medication Amerge helped her, but when the medication ended, her headaches recurred.

---

[1] References are to the Appendix containing a full and complete Bates numbered copy of the administrative record (or claim file) at issue, the relevant plan document and an affidavit authenticating the documents.

4

Plaintiff was nausea-free while on Amerge. (App. Ex. B, pp. 325, 326). Plaintiff stopped

working on July 30, 2002 and subsequently relocated to her beach home (App. Ex. B, 329-331).

### Plaintiff's Medical Treatment Post-Termination of Employment

On October 1, 2002, Dr. Lloyd reported that Plaintiff again complained of severe

headaches, nausea and that she was depressed. (App. Ex. B, p. 327-328). At that time,

Dr. Lloyd advised that she decrease or eliminate her use of Imitrex and instead take a medication

called Frova. (Id.).

On October 23, 2002, Plaintiff underwent an MRI of her brain. The results

included small foci of signal abnormality involving the mid pons, probably secondary to chronic

microangiopathic ischemia (lack of blood flow to the capillaries). As noted earlier, an ischemic

stroke occurs when an <u>artery</u> to the brain is blocked. Plaintiff suffers from microangiopathic

ischemia – a small blockage in the capillaries in the brain. Plaintiff did not have a CVA in a

larger artery that caused acute neurological findings. Instead, the MRI showed a signal

abnormality in the mid pons caused by a blockage in the small capillaries. The mid pons is part

of the autonomic nervous system and relays sensory information between the cerebellum and

cerebrum and is involved in motor control. Otherwise, the study was unremarkable. On

October 30, 2002, Plaintiff returned to Dr. Lloyd. At that time, she reported her headaches were

markedly improved and that she was no longer experiencing chronic daily headaches. (App.

Ex. B, pp. 330-331). At that time, Plaintiff informed Dr. Lloyd that she was not able to return to

work and that she would be terminated in the very near future. She also informed Dr. Lloyd that

she was going to relocate to her home at the beach, and if the nausea resolves, may seek

employment in that area. (Id.).

On December 30, 2002, Plaintiff again treated with Dr. Lloyd. At that time, she reported that her migraine headaches worsened with the discontinuation of Topamax. (App. Ex. B, pp. 332-333). However, when she restarted the medication, she enjoyed excellent control of her migraine headaches. (Id.). She also informed Dr. Lloyd that she was not going to see Dr. Schulman because her headaches are under good control with the current regimen. (Id.). On January 2, 2003, Dr. Coniglio completed the attending physician's statement and reported that Plaintiff could not work currently but would be able to return to work when she was symptom-free from her headaches. (App. Ex. B, p .360).

### Unum's Review of the Medical Records

On March 14, 2003, the medical records were reviewed by Alan Neuren, M.D., a neurologist and in-house physician employed by Unum. (App. Ex. B, pp. 414-415). Dr. Neuren noted that Plaintiff was claiming impairment due to nausea and that the various medications she takes may be the cause of the nausea. (Id.). However, Dr. Neuren believed it was unclear why her nausea would preclude her from functioning in a sedentary capacity. The report from July 2, 2002 indicated that her nausea was better. While she reported increased nausea on July 29, 2002, she did not see anyone for two months after that. Dr. Neuren believed it was inconsistent that Plaintiff would go for two months with nausea so severe as to render her disabled without continuing care. (Id.). Further, Dr. Neuren opined that nausea is mediated at the medulla, and that it would be unlikely for nausea to occur as a consequence of the microangiopathic lesions noted in the pons area of Plaintiff's brain. Further, one would not see persistent nausea from such a lesion. (Id.). Finally, Dr. Neuren concluded that there were no findings that would support a loss of cognitive functioning. Dr. Neuren also opined that Plaintiff appeared depressed, which could account for her perceived altered cognitive ability. (Id.).

6

On March 24, 2003, a vocational review was conducted by Douglas Palmer, a Unum employee, to determine the material duties of a systems analyst. Palmer concluded that the duties involved analyzing data processing requirements to plan data processing systems that will allow system capabilities required for projected workloads and plan layout and installation on these systems or modification of existing systems. The physical demands of the occupation generally do not require lifting more than ten pounds and the duties are primarily performed from a seated position. (App. Ex. B, p. 412).

Based on Plaintiff's medical records, Dr. Neuren's review of those records, and the vocational analysis, Unum denied her claim on March 27, 2003. (App. Ex. B, p. 406-411). Although Unum acknowledged that Plaintiff suffered from chronic headaches, essential tremor and nausea, the records reflected that her headache symptoms were well-controlled. (App. Ex. B, p. 409). As of December 30, 2002, the records also reflected that her headaches and tremors were well-controlled, although she did complain of nausea. (Id.). Unum determined that, if Plaintiff was truly disabled by nausea, she would not have gone two months with nausea so severe as to cause a disability without obtaining care. The records reflected that Plaintiff did not seek treatment from July 2, 2002 to October 1, 2002 and from October 30, 2002 to December 30, 2002. Accordingly, Unum found that her symptoms were not of such a severity as to preclude her from a sedentary occupation. As a result, Unum denied her claim for benefits.

### Plaintiff's reconsideration request and subsequent appeal

Plaintiff claimed that she had, in fact, treated between July 2, 2002 and October 1, 2002. However, Plaintiff did not submit evidence of those visits to Unum until after the denial of the Claim. Unum did obtain a treatment record by Dr. Coniglio dated April 15, 2003. At that time, Plaintiff reported severe and chronic nausea. She also reported that her migraine headaches

7

were under control. (App. Ex. B, pp. 139-140). Plaintiff also submitted a report from

Dr. Gabriel dated August 15, 2002. Dr. Gabriel concluded that the cause of her problem was not

a vestibular disorder. (App. Ex. B, pp. 143-144). He believed that her nausea was related to her

migraine headaches or some other neurologic condition. At that time the diagnosis was chronic

nausea, etiology unknown. (Id.).

      Plaintiff also submitted a report dated June 6, 2003 from Dr. Lloyd. Dr. Lloyd

reported that her headaches were under good control but that he had no success whatsoever in

bringing the nausea under control. Dr. Lloyd recorded Plaintiff's subjective complaints that her

nausea and disequilibrium prevented her from performing even sedentary work. (App. Ex. B,

pp. 128-129).

      The additional medical records were again reviewed by Dr. Alan Neuren, Unum's

in-house physician. Dr. Neuren repeated his earlier opinion that nausea centers reside in the

medulla in the brain and not the pons area of the brain. He believed that it was inconsistent that

such a lesion could cause chronic nausea. (App. Ex. B, p. 388).

      On July 3, 2003 Unum informed Plaintiff that the additional information did not

change its earlier decision and her claim was denied. (App. Ex. B, pp. 386-387). Plaintiff then

filed an appeal on August 11, 2003 but submitted no additional evidence to support her claim.

      As part of the appeal, Unum submitted the records to Dr. Lani Graham, a Unum

physician, for review. (App. Ex. B, pp. 101-108). Dr. Graham conducted an extensive review of

all of the medical evidence in the file. Dr. Graham concluded that although Plaintiff lost some

weight, the pattern of weight loss was not consistent with a severe, ongoing chronic condition of

intractable nausea. (App. Ex. B, p. 102). Dr. Graham also found that Dr. Lloyd's explanation

for the cause of the lesion was not reasonable. (Id.). Neurologically, the area where Plaintiff had

8

a small pontine stroke is usually not associated with nausea. Dr. Graham concluded that the area

of the brain associated for nausea is in the postremia in the floor of the ventricle. (Id.).

Dr. Graham noted that while a central nervous system infarction might cause acute nausea and

vomiting, there was no good explanation for why the small lesion in the pons (identified in

Plaintiff's MRI) would cause chronic nausea. (Id.)

Dr. Graham noted that Plaintiff was requesting Unum to accept this very unusual

explanation for the nausea and significant loss of functional capacity along with the equally

unlikely proposition that there was no treatment for the condition. (App. Ex. B, pp. 101-102).

Dr. Graham also noted that Plaintiff had decided to relocate to her home at the beach and, in

December of 2002, was in the process of renovating that house. (App. Ex. B, p. 101).

Dr. Graham found that the medical information supported the subjective

complaint of nausea on a fairly consistent basis. She also found that Plaintiff most likely lost

some weight in the latter part of 2002 because of the nausea. However, by October 30, 2002

Plaintiff was clearly improved to the point where she failed to keep an appointment with another

physician that had been made for her on December 5, 2002. Dr. Graham found that this fact was

inconsistent with behavior expected of a severely ill person. Dr. Graham concluded that the

Plaintiff's claims of functional loss were not credible.

As a result of these subsequent medical reviews, Unum denied Plaintiff's appeal

on October 31, 2003. (App. Ex. B, pp. 377-383). In its decision, Unum noted that Plaintiff was

capable of working through July 31, 2002 although she was experiencing chronic nausea and

daily headaches. (App. Ex. B, p. 381). Unum carefully reviewed all the medical evidence

submitted by the Plaintiff and her complaints both prior to her cessation of work and afterwards.

As a result, Unum concluded that the medical records provided did not establish a significant

9

change in her medical condition at the time she stopped working on July 31, 2002. (App. Ex. B, p. 379). Unum also noted that although Plaintiff did lose some weight, the pattern of weight loss was not consistent with a severe and ongoing chronic condition of intractable nausea. (App. Ex. B, p. 378).

Unum also advised the Plaintiff that its medical consultants disagreed with Dr. Lloyd's explanation for the cause of the nausea. Further, Unum questioned Plaintiff's failure to seek further evaluation and treatment if her chronic nausea was as severe as Plaintiff claimed. (Id.). Based upon all the evidence in the administrative record, Unum questioned the credibility of the functional impact that Plaintiff alleged. Because Plaintiff could not establish a change in her condition, Unum determined that she should be capable of working beyond July 30, 2002 and prior to her move to the beach. (App. Ex. B, p. 377). Accordingly, Unum affirmed the denial of benefits.

## IV. ARGUMENT

The Court should grant Defendant's motion for summary judgment and/or for judgment through a non-jury determination because the denial of Plaintiff's long-term disability benefits was reasonable and neither arbitrary nor capricious. The denial of benefits was supported by the administrative record and the opinions of competent medical and vocational experts and should be affirmed by this Court.

Summary judgment and/or judgment through a non-jury determination is appropriate in this case because there is no genuine issue of material fact and Unum is entitled to judgment as a matter of law. See Fed. R. Civ. p. 52(a) and 56(c); See also Celotex Corp. v. Catrett, 477 U.S. 317 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986); Matsushita

10

Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574 (1986); Knabe v. Boury Corp., 114 F.3d 407, 410 n. 4 (3d Cir. 1997).

The Supreme Court has emphasized the judicial policy favoring use of summary judgment for the prompt and efficient resolution of claims without factual issues or legal bases. Celotex Corp., 477 U.S. at 327 (summary judgment is not a "disfavored procedural shortcut"; rather, it is an integral part of the judicial process "designed 'to serve the just, speedy and inexpensive determination of every action").

The determination of whether an administrator acted in an arbitrary and capricious manner in determining eligibility for benefits under the terms and provisions of an ERISA-regulated plan may properly be decided by the court as a matter of law. See Firestone Tire and Rubber v. Bruch, 489 U.S. 101 (1989). Here, the summary judgment process is an especially appropriate mechanism because, as explained below, this Court is limited to determining whether or not Unum acted arbitrarily and capriciously. Thus, the sole question before this Court is a question of law, namely whether Unum's decision to deny benefits was reasonable. As long as the decision was reasonable, the Court must uphold this decision. See Firestone, 489 U.S. at 111; Abnathya v. Hoffman-La Roche, Inc., 2 F.3d 40, 45 (3rd Cir. 1993).

In the alternative, if the Court does not grant summary judgment, this case is ripe for a non-jury determination based on the factual record developed in the administrative review of Plaintiff's claim which, as the Third Circuit has often held, is the only evidence properly considered in determining whether the denial of the claim was arbitrary. E.g., Keating v. Whitmore Manufacturing Co., 186 F.3d 418,421-22 fn. 6 (3d Cir. 1999). Accordingly, if not resolved through summary judgment, the case should be resolved by the Court through a non-jury determination.

11

This approach was addressed in <u>Wilkins v. Baptist Healthcare System, Inc.</u>, 150 F. 3d 609, 617-19 (6th Cir. 1998). There the court held that ERISA actions for denial of benefits should not be resolved through a traditional bench trial. Instead, courts should "consider the parties' arguments concerning the proper analysis of the administrative record, but may not admit or consider any evidence not presented to the administrator." <u>Id.</u> at 619. The court noted that a typical bench trial "would inevitably lead to the introduction of testimonial and/or other evidence that the administrator had no opportunity to consider." <u>Id.</u> at 618.

The Seventh Circuit Court of Appeals endorsed this approach in <u>Hess v. Hartford Life & Accident Ins. Co.</u>, 274 F.3d 456, 461 (7th Cir. 2001). In <u>Hess</u>, the district court had entered a judgment after reviewing a stipulated factual record that comprised the administrative record.

This approach was well-explained in <u>Crespo v. UNUM Life Insurance Co. of America</u>, 2003 WL 22967245 (ND. ILL Dec. 18, 2003), where the Court advocated the use of a "trial on the papers" or a judgment without a trial because the "summary judgment process has the potential for a non-decision, extra litigation, additional costs, and unnecessary delay." <u>Id.</u> at *8. In <u>Crespo</u>, the court noted that these problems are eliminated by proceeding with a trial on the papers. <u>Id.</u>

The Court further discussed numerous problems using the summary judgment procedure in an ERISA denial of benefits case including the difficulty in analyzing a summary judgment motion where the plan administrator is given discretion pursuant to the terms of the plan.

> On the one hand, the court must look at the evidence in the light most favorable to the plaintiff in analyzing whether the plan administrator abused its discretion. On the other hand, the court must give deference to the administrator's decision. This

12

> constitutes complex mental gymnastics that are not necessary in a trial on the papers situation. Under a trial on the papers, the plaintiff must meet its burden of proof that the plan administrator's decision was arbitrary and capricious. For all of these reasons, the Court strongly recommends that, in the future, parties consider a trial on the papers.

Id. at *10.

Plaintiff, of course, has the burden of proving her entitlement to benefits and, for a non-jury determination, is not entitled to any inferences she might arguably receive under Fed. R. Civ. p. 56. As explained above, Plaintiff cannot satisfy her burden of proving that the denial of her benefits was arbitrary and capricious; therefore, Unum is entitled to judgment in its favor.

## A. THE COURT SHOULD REVIEW UNUM'S DECISION UNDER THE ARBITRARY AND CAPRICIOUS STANDARD OF REVIEW.

### 1. The Plan Administrator Had The Necessary Discretion To Require Deferential Review.

In the seminal Firestone case, the Supreme Court held that an action to recover plan benefits under ERISA, 29 U.S.C. § 1132(a) (1) (B), should be judicially reviewed under an abuse of discretion standard if "the benefit Plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the Plan." Id. at 115.

In determining the appropriate standard of review for ERISA actions under § 1132(a) (1) (B), the Supreme Court in Firestone was guided by principles of trust law, which apply a deferential standard of review to determinations that a trustee has discretionary power to make. Id. at 115. Under those principles, the discretionary exercise of power by an ERISA plan administrator or fiduciary is not subject to court control, absent an abuse of discretion. Furthermore, an ERISA plan administrator or fiduciary, like a trustee, may be given power to construe doubtful or disputed terms, the interpretations of which will not be disturbed if reasonable. Id.

13

"[T]he abuse of discretion standard of review is narrow, and the 'court is not free to substitute its judgment for that of the [administrator] in determining eligibility for plan benefits.'" Mitchell v. Eastman Kodak Co., 113 F.3d 433, 439 (3rd Cir. 1997) (citing Abnathya, 2 F.3d at 45); Hoover v. Metropolitan Life Ins. Co., 2006 U.S. Dist. LEXIS 5481,*29 (E.D. Pa Feb. 14, 2006).  The decision of a plan fiduciary should be upheld even if the court disagrees with it provided that the decision is rationally based and consistent with the applicable plan provisions.  Abnathya, 2 F.3d at 45; Moats v. United Mine Workers of Am. Health and Retirement Funds, 981 F.2d 685, 688 (3d Cir. 1992); Shiffler v. Equitable Life Assur. Soc'y of the U.S., 838 F.2d 78 (3d Cir. 1988); Marx v. Meridian Bancorp, 2001 U.S. Dist. LEXIS 8655,*12 (June 21, 2001, E. D. Pa.), aff'd, 2002 U.S. App. LEXIS 5277 (3d. Cir. March 27, 2002), cert. denied, 537 U. S. 885 (200).

If the fiduciary offers a reasonable explanation, its decision "should not be disturbed even if another reasonable, but different, interpretation may be made." Donaho v. FMC Corp., 74 F.3d 894, 899 (8th Cir. 1996) (citing Krawczyk v. Harnischfeger Corp., 41 F.3d 286, 279 (7th Cir. 1994)).  See also DeWitt v. Penn-Del Directory Corp., 106 F.3d 514, 520 (3d Cir. 1997); Hoover, 2006 U.S. Dist. LEXIS 5481,*16.  Thus, as the Third Circuit noted succinctly, under this standard, the "court is not free to substitute its own judgment for that of the defendants in determining eligibility for plan benefits." Orvosh v. Program of Group Insurance for Salaried Employees of Volkswagen of America, Inc., 222 F.3d 123, 129 (3d Cir. 2000).  See also, Holmes v. Pension Plan of Bethlehem Steel, 2000 U.S. Dist. LEXIS 6733, *29 (E.D. Pa, May 4, 2000), aff'd in part and rev'd in part, 213 F.3d 124 (3d Cir. 2000); Hoover, 2006 U.S. Dist. LEXIS 5481,*29.

14

The discretion required to trigger the deferential arbitrary and capricious standard can be stated expressly in the plan or implied from its terms. Luby v. Teamsters Health Welfare and Pen. Trust Funds, 944 F.2d 1176, 1180 (3d Cir. 1991). Here, the arbitrary and capricious standard of review applies. Significantly, the Plan contains a provision that expressly grants discretionary authority. This provision states that the plan administrator shall have the sole discretionary authority to determine eligibility for benefits and to interpret the terms and provisions of the plan. [App. Ex. A, pp. 11, 36]. Where there is an express grant of discretionary authority, the arbitrary and capricious standard applies. Abnathya, 2 F.3d at 45.

### 2. Pinto v. Reliance Does Not Justify A Significant Departure From Deferential Review Here

Plaintiff will ask the Court to modify the arbitrary and capricious standard of review under Pinto v. Reliance Standard Life Ins. Co., 214 F. 3d 377 (3d Cir. 2000). The Pinto Court addressed the apparent conflict of interest arising when an insurer both decides claims and pays benefits from its own assets because "the fund from which the monies are paid is the same fund from which the insurance company reaps its profits . . ." Id. at 378. Accordingly, for cases where an insurance company determines claims and pays benefits from its own assets, the Pinto court adopted a "sliding scale" method under which less deference applies if the conflict of interest impacted the claim determination.

The Pinto Court focused on a number of "procedural anomalies" in the insurer's claims handling process which are not present here. Id. at 394. The "anomalies" in Pinto included:

- Reliance reversed a decision to grant benefits without receiving any additional medical evidence after it had previously decided that Pinto was disabled. Id. at 393.

15

- Reliance evaluated evidence selectively by (a) starting an investigation into the claim when Pinto was denied Social Security benefits but failing to reinstate benefits when Pinto was later awarded SSDI benefits; and (b) accepting parts of the opinion of Pinto's attending physician while rejecting (without adequate explanation) his ultimate opinion of total disability. Id. at 393-94.

- Reliance rejected a recommendation by one of its employees to reinstate Pinto's benefits pending further testing. Id. at 394.

- Reliance pressed one of its consulting physicians to render an opinion that Pinto was not disabled even though he had previously concluded that this determination could not be made without Pinto first receiving physical therapy, which was never accomplished. Id.

By contrast to the procedural anomalies in Pinto, this case involves a claim decision free from even the appearance of a conflict of interest.

In contrast to Pinto, the administrative record reveals that Unum carefully reviewed all of the evidence including the medical evidence provided by Plaintiff's physicians. This evidence established that Plaintiff had headaches for over 30 years and continued to work. (App. Ex. B, pp. 310-312). In fact, Plaintiff had stated three months before she stopped working that her headaches were better than the last 20 years. (App. Ex. B, pp. 314-315). Further, Plaintiff had complained about being nauseous at least 11 months before she stopped working. (App. Ex. B, pp. 300-301). The administrative record does not reveal a change in her medical condition that occurred before she stopped working.

In fact, Dr. Coniglio stated in her claims application that she could work when she was symptom free of headaches. (App. Ex. B, p. 360). Yet Plaintiff told her treating physician that the control of her headaches was better than the last 20 years. (App. Ex. B, pp. 314-315). Plaintiff decided to relocate to her beach home before she was terminated from her job. (App. Ex. B, p. 331).

16

Under this factual scenario, it is no wonder that Dr. Graham, Unum's physician, questioned the credibility of Plaintiff's alleged functional loss of capacity. (App. Ex. B, pp. 101-108). Dr. Graham had noted that Plaintiff had worked for years with headaches. (Id.) Further, Dr. Graham noted that the pattern of weight loss was not consistent with a severe, chronic condition of intractable nausea. (App. Ex. B, p. 102.) Dr. Graham also found the alleged cause of the nausea (pons lesion) was not reasonable. (Id.)

Further, Unum did not pressure any of its physicians to render a particular opinion that was favorable to a denial of claim. Rather the records were reviewed by physician consultants and the consensus was that the records did not support a finding of total disability and that plaintiff could perform sedentary to light work.

In short, the record does not contain evidence of procedural anomalies like those found in Pinto. Instead, the record shows that Unum gave Plaintiff every opportunity to support her claim and objectively reviewed the evidence provided by Plaintiff and her physicians.

Because there is no evidence that a conflict of interest impacted the claim decision here, any modification to the "extremely deferential" arbitrary and capricious standard of review should be modest. Pinto, 214 F.3d at 393. Among other things, the Pinto court held, "the arbitrary and capricious standard may be a range, not a point…[it is] more penetrating the greater the suspicion of partiality, less penetrating the smaller the suspicion is." Id. at 392, 393.

As one court recently noted in circumstances similar to those found here, where there is no evidence of the sort of procedural anomalies found in Pinto, "the court will apply an arbitrary and capricious standard of review with a high level of deference to the administrator, yet modified to the extent that our deference is not absolute." Russell v. The Paul Revere Life

Ins. Co., 148 F. Supp. 2d 392, 406 (D. Del. 2001), aff'd, 2002 U.S. App. LEXIS 4732 at * 12-13 (3d Cir. March 25, 2002).

Further, the Third Circuit has recently stressed that even under the heightened standard, the Court's review should still afford considerable deference. E.g., Grossman v. Marriott International, Inc., 144 Fed. Appx. 233, 2005 U.S. App. 14685 at *4-5 (3d Cir. July 15, 2005) (holding that the heightened standard does "not leave the court free to simply substitute its judgment for that of the administrator."); see also, Stratton v. E.I. DuPont De Nemours & Co., 363 F.3d 250, 256 (3d Cir. 2004); Hoover, 2006 U.S. Dist. LEXIS 5481,*12.

As explained above, Unum's decision was based on a thorough and impartial review of the records by qualified medical professionals. Further, the decision process afforded Plaintiff ample opportunity to support her claims. Thus, only a modest adjustment to the standard of review is warranted. And such a modest adjustment to the standard would not undermine Unum's motion for summary judgment.

## B. THE COURT SHOULD AFFIRM THE DENIAL OF PLAINTIFF'S CLAIM BECAUSE UNUM DID NOT ABUSE ITS DISCRETION BUT INSTEAD RENDERED A REASONABLE DECISION.

Plaintiff has a heavy burden of proving that Unum's decision was arbitrary and capricious. She also has a heavy burden of establishing a disabling condition where she worked for over 30 years with headaches and about 11 months with complaints of nausea. Plaintiff is unable to show a change in her medical condition that resulted in her claimed disability. Because of this, she cannot establish a prima facie showing of disability. Lasser v. Reliance Standard Life Insurance Co. 344 F.3d 381, 391 (3d Cir. 2003), cert. den., 158 L. Ed. 2d 963 (2004).

### Unum Conducted A Reasonable Review Of The Evidence

18

Unum justifiably questioned the extent of her alleged impairment and the severity of her condition as a result of the fact that she worked for years with complaints of headaches, that she reported better control of her headaches than anytime in the last 20 years and the alleged cause of the nausea was medically unreasonable. In short, nothing had changed about Plaintiff's medical condition to explain why she was able to work for many years with the reported symptoms but suddenly had to stop working in the July of 2002.

As noted earlier, Plaintiff has had a long history of depression and anxiety and has suffered from headaches for over 30 years. (App. Ex. B, pp. 280-297, 310-312). In April of 2001, Plaintiff reported that her headaches were under control and they have been controlled better than she has experienced in the last 20 years. (App. Ex. B, pp. 314-315). In November of 2001 Plaintiff reported to Dr. Lloyd that her headaches were currently controlled. (App. Ex. B, p. 320). On May 29, 2002 Plaintiff reported that her headaches were better when she was not working. (App. Ex. B, pp. 323-324). Plaintiff's medical records do not establish any worsening of her headaches before she stopped working.

The medical records reflect Plaintiff began complaining of nausea in October of 2002. (App. Ex. B, pp. 137-138. 300-301). However, Plaintiff continued to work through July of 2002 even though she complained of nausea (App. Ex. B, pp. 137-138, 323-324). Once again, Plaintiff's medical records do not establish that her nausea became worse from January of 2002 through June of 2002. Dr. Lloyd believed that the nausea was caused by a pontine stroke. (App. Ex. B, pp. 128-129). Dr. Lloyd mentions in his June 6, 2003 report that the nausea has been remarkably resistant to all forms of medications.

These medical records were reviewed by Unum's in-house physician, Alan Neuren, M.D. Dr. Neuren noted that nausea centers reside in the medulla and not the pons.

19

(App. Ex. B, p. 388). Dr. Neuren also found that it is inconsistent that a lesion in the pons would cause chronic nausea. Dr. Neuren found Dr. Lloyd's opinion as implausible. (Id.).

Dr. Graham, another physician with Unum, concurred that Dr. Lloyd's explanation for the cause of the nausea was not reasonable. (App. Ex. B, p. 102). Dr. Graham noted that the area with the small lesion is not an area of the brain usually associated with nausea. The zone for nausea in the brain is in the floor of the fourth ventricle. While a central nervous system infarction might cause acute nausea and vomiting, there is no good explanation for this small lesion in the pons to cause chronic nausea. (Id.).

In its initial decision, Unum noted that Plaintiff had worked in the past with complaints of headaches, nausea and depression. (App. Ex. B, p. 410). Unum concluded that there was no significant change in her medical condition at the time she stopped working on July 31, 2002. (App. Ex. B, p. 379). Unum also found that although she lost 20 pounds between July 2, 2002 and October 30, 2002, the weight loss was not consistent with an ongoing chronic condition of intractable nausea. (App. Ex. B, p. 378). Unum also noted that Dr. Lloyd's explanation for the cause of the nausea was not reasonable. (Id.). Further, Unum concluded that Plaintiff's behavior in failing to follow up with a referral to a specialist for her nausea was inconsistent with her claims of severe intractable nausea. (App. Ex. B, p. 378). If Plaintiff were that ill with nausea she would have sought and attended the evaluation scheduled with Dr. Schulman. (Id.). Further, it appears that Plaintiff made the decision in October of 2002, before she lost her employment, to relocate to the beach and reside there. (App. Ex. B, pp. 329-331).

In short, the denial of Plaintiff's claim resulted from a careful and reasonable evaluation of the evidence she presented. There is no basis to conclude that the denial of the claim was arbitrary.

### Unum Was Not Required To Blindly Accept The Opinions Of Plaintiff's Physicians

Plaintiff will likely argue that Unum was somehow required to simply accept at face value her physicians' opinions in support of her claim. But Unum did not have to give greater weight or any special deference to Plaintiff's doctors' opinions. In fact, the Supreme Court has rejected the notion that a treating physician's opinions must be accorded any special weight. Specifically, in The Black & Decker Disability Plan v. Nord, 538 U.S. 822 (2003), the Court held that the "treating physician rule" used in Social Security Disability proceedings was inapplicable to ERISA benefit determinations.

Critically, Unum was not dismissive of Plaintiff's physicians. Instead, it carefully considered their opinions but rejected their conclusions for reasonable and well-documented reasons. This is exactly the sort of careful review envisioned by the Nord Court.

### Presence Of Conflicting Medical Evidence Did Not Render The Denial Arbitrary

Next, Plaintiff will undoubtedly attack how Unum evaluated or weighed the medical evidence and will argue that there is some evidence to support her claim. However, the issue is not whether there was some evidence in the administrative record that might support Plaintiff's claim, instead, the issue is whether Unum's decision to accept contrary medical or other evidence was reasonable. Abnathya, 2 F.3d at 45; Fergus v. Standard Ins. Co., 27 F. Supp. 2d 1247 (D. Or. 1998).

Indeed, the mere existence of conflicting medical evidence in an administrative record does not render a denial of benefits arbitrary and capricious. Cerneskie v. Mellon Bank

21

Long Term Disability Plan, 142 Fed. Appx. 555, 557 n.2 (3d Cir. 2005) (where attending physician's office notes had notations suggesting work capacity, plan administrator could rely on those notes despite some conflicting reports from same physician); Nichols v. Verizon Communications Inc., 78 Fed. Appx. 209 (3d Cir. 2003) (conflicting medical evidence does not render denial of benefits arbitrary); Steele v. The Boeing Company, 399 F. Supp. 2d 628 (E.D. Pa. 2005) (same); Hoover, 2006 U.S. Dist. LEXIS 5481,*16(same); Cf. Tesche v. Continental Cas. Co., 109 Fed. Appx. 495, 497-498 (3d Cir. 2004) (conflicting vocational evidence did not render denial of benefits arbitrary).

These cases confirm a long-standing approach employed in the Third Circuit allowing administrators the discretion to resolve conflicts in opinions provided by medical professionals. Orvosh, 222 F.3d at 129-130 (affirming denial of benefits despite conflicting medical opinions from the plaintiff's physician who "constantly and continually expressed his disagreement" with the conclusion that the plaintiff could work). Simply put, a disagreement among professionals who have examined a claim does not mean that a denial of benefits was arbitrary. Stratton v. E.I. DuPont De Nemours & Co., 363 F.3d 250, 258 (3d Cir. 2004) (rejecting argument that administrator failed to credit opinions of treating physician holding that "[a] professional disagreement does not amount to an arbitrary refusal to credit.")

Here, Unum resolved the conflict reasonably. First, it had the benefit of two physician's medical records reviews which concluded that while Plaintiff may have nausea and headaches, she is not so restricted that she should be considered totally disabled. This conclusion was supported by the inconsistencies in the records as well as information concerning Plaintiff's work. It was certainly reasonable for Unum to rely on these opinions. Sapovits v. Fortis Benefits Ins. Co., No. 01-3628, 2002 U.S. Dist. LEXIS 24987 at *42-43, (E.D. Pa.

22

Dec. 30, 2002) (affirming decision based on medical records review); Etkin v. Merck & Co.,

No. 00-5476, 2001 U.S. Dist. LEXIS 17692 at *15-16, (E.D. Pa. October 30, 2001)(affirming

decision based on medical records review). Unum also reasonably relied on advice and opinions

from its in-house medical professionals. Forchic v. Lippincott, Jacobs & Gruder, No. 98-5423

(JBS), 1999 U.S. Dist. LEXIS 21419 at *43-44, (D. N.J. Nov. 29, 1999) (noting that there is no

prohibition on relying on an in-house physician to perform a record review of the medical

evidence), aff'd sub nom., Forchic v. Standard Ins. Co., No. 99-6132, 2001 U.S. App. LEXIS

6303 (3d Cir. March 27, 2001).

   In short, the case law confirms that where, as here, there are conflicting opinions

in the medical records, it is the administrator's role to evaluate the evidence and determine which

of the competing views has greater merit. As the Third Circuit recently noted in Sommer v.

Prudential Ins. Co., 138 Fed. Appx. 426 (3d Cir. 2005): "what Sommer argues was a selective

evaluation of her medical history is more accurately characterized as the Committee's weighing

of the evidence which it was entitled to do under the Plan." 138 Fed. Appx. at 428. Thus,

because Unum resolved the conflict reasonably, its decision should be affirmed.

### Unum Properly Focused On Restrictions And Limitations, Rather Than Merely Diagnosis, In Deciding Plaintiff's Claim

   Finally, Plaintiff will argue that the mere fact that the occurrence of her CVA was

not disputed means that she was entitled to benefits. However, several recent cases confirm that

the critical issue in a disability dispute is not whether there is a "diagnosis" but instead whether

the diagnosed condition results in restrictions and limitations that preclude employment. Tesche

v. Continental Cas. Co., 109 Fed. Appx. 495, 498 n.3 (3d. Cir. 2004)(evidence of a diagnosis of

fibromyalgia did not render denial of benefits arbitrary where there was no evidence that the

condition rendered plaintiff disabled); Steele v. The Boeing Company, 399 F. Supp. 2d 628 (E.D.

SL1 649303v1/010305.00179

Pa. 2005)(same); <u>Cini v. Paul Revere Life Ins. Co.</u>, 50 F. Supp. 2d 419 (E.D. Pa. 1999)(same).

Again, the critical question here is not whether Plaintiff had a CVA (there is in fact general

agreement that she did). Instead, the critical question is her level of impairment.

      As the Ninth Circuit observed, "That a person has a true medical diagnosis does

not itself establish disability . . . It is not for an appellate court to decide that fibromyalgia should

be treated by ERISA plan administrators as disabling in a particular case. That is a medical and

administrative judgment committed to the discretion of the plan administrator based on a fair

review of the evidence." <u>Jordan v. Northrop Grumman Corporation Welfare Benefit Plan</u>, 370

F.3d 869, 880 (9th Cir. 2004). For the same reason, the Court should affirm Unum's decision

here.

## C. PLAINTIFF HAD, AT LEAST, THE CAPACITY TO PERFORM SOME OF THE DUTIES OF HER OCCUPATION AND, THEREFORE, NO BENEFITS ARE PAYABLE

      As noted earlier, the Plan contains a provision that benefits will cease if, during

the first 24 months of payments you were able to work in your own occupation on a part-time

basis but you choose not to. (App. Ex. A, 24). Here, Plaintiff worked with headaches for years.

Even if Plaintiff did not have the ability to perform all of the duties of her occupation, she clearly

had the capacity to perform some of his duties of her occupation which defeats her claim for

benefits. This position is consistent with Third Circuit law as outlined in <u>Russell v. Paul Revere</u>

<u>Life Ins. Co.</u>, 288 F.3d 78 (3d Cir. 2002), which addressed the interplay between "total" and

"partial" disability provisions.

      The plaintiff in <u>Russell</u> argued that he was totally disabled as long as he could not

perform "some" of the important duties of his occupation. The Court rejected this position and

held that (a) total disability benefits are payable only for a disability that is truly total (measured

24

by the inability to perform all important occupational duties) <u>and</u> (b) partial disability benefits are not payable unless the insured is working. 288 F.3d at 82.

Thus, under <u>Russell</u>, Plaintiff's burden is to prove, by a preponderance of the evidence, that she cannot perform <u>any</u> of the substantial and material duties of her occupation. As outlined above, however, there is ample evidence supporting the conclusion that she has the capacity to perform some of her duties, at least on a part-time basis. In short, Plaintiff's failure to work in her occupation on a part-time basis is fatal to her claim.

## D. THE SOCIAL SECURITY DECISION IS NOT DETERMINATIVE

Plaintiff will likely argue that it was arbitrary for Unum not to award her benefits under the Plan because she is receiving SSDI benefits. But the Plan reserves for Unum, not the Social Security Administration, the discretion to determine whether Plaintiff satisfies the definition of total disability under the Plan.

As a result, there is no conflict in denying a claim under a private ERISA plan despite an award of SSDI. <u>Scarinci v. Ciccia</u>, 880 F. Supp. 359, 365 (E.D. Pa. 1995) (rejecting Plaintiff's argument that denial of disability benefits under ERISA plan was arbitrary and capricious because Plaintiff had been awarded SSDI benefits).[2] This result is compelled for <u>four</u> reasons.

First, recent Supreme Court case law has confirmed that the nation-wide governmental SSDI program is governed by different rules and different policy considerations than those applicable to private ERISA plans established by individual employers. This issue

---

[2] Many courts have agreed with this common sense proposition: <u>Doyle v. Paul Revere Life Ins. Co.</u>, 144 F.3d 181, 186-87 n. 4 (1st Cir. 1998); <u>Cox v. Mid-America Dairymen, Inc.</u>, 965 F.2d 569, 572-73 (8th Cir. 1992); <u>Pokol v. E. I. DuPont De Nemours and Co., Inc.</u>, 963 F. Supp. 1361, 1379-80 (D. N.J. 1997). <u>Pagan v. The NYNEX Pension Plan</u>, 846 F. Supp. 19, 19 (S.D.N.Y. 1994), aff'd., 52 F.3d 438 (2nd Cir. 1995); <u>Chandler v. Raytheon Employees Disability Trust</u>, 53 F. Supp. 2d 84, 91 (D. Mass. 1999); <u>Harris v. FMC Corp.</u>, Civ. No. 1:90-CV -1992 U.S. Dist. LEXIS 21023, *17 (N.D. Ga. Jan. 23, 1992).

was addressed in the recent unanimous Supreme Court decision in <u>The Black & Decker</u>

<u>Disability Plan v. Nord</u>, 538 U.S. 822 (2003).  In <u>Nord</u>, the Supreme Court unanimously held

that, unlike SSDI claims, ERISA does not require plan administrators to afford any special

deference to opinions of treating physicians.  In reaching this conclusion, the Court explained

that the Social Security Disability Income (or "SSDI") program (where the treating physician

rule is followed) is significantly different from ERISA disability benefits.

      Notably, the unanimous <u>Nord</u> opinion was written by Justice Ginsburg.  During

her tenure on the Court of Appeals for the D.C. Circuit, Justice Ginsburg expressly addressed the

question of whether an ERISA plan was required to give deference to an award of SSDI benefits.

<u>Block v. Pitney Bowes, Inc.</u>, 952 F.2d 1450, 1455-56 (D.C. Cir. 1992) (Ginsburg, J.).

Judge Ginsburg held that an award of SSDI benefits <u>was entitled to no weight</u> in evaluating an

ERISA disability claim.  <u>Id.</u>

      Second, the standards for obtaining an SSDI award -- and the evidentiary record --

may differ from the standards, definitions and evidentiary record for an individual ERISA claim.

<u>See</u> <u>e.g.</u>, <u>Chandler v. Raytheon</u>, 53 F. Supp. 2d at 91.

      Third, even if the SSDI and ERISA-plan standards were exactly the same, a

denial of benefits under an ERISA plan can nevertheless be reasonable despite an SSDI award.

Simply put, reasonable minds viewing a claim (even with the same evidence and under the same

standards) can differ.  <u>See</u> <u>Chandler v. Underwriters Labs., Inc.</u>, 850 F. Supp. 728, 737 (N.D. Ill.

1994).  Indeed, tolerance of such disagreements, provided there are reasonable grounds, is the

hallmark of deferential review.

      Finally, Plaintiff's argument would turn the entire system of judicial review of

ERISA decisions on its head.  Under ERISA's arbitrary and capricious standard, the Court is

26

required to render a decision based solely on the administrative record (i.e., the evidence that was before the plan administrator when it rendered its decision). Mitchell, 113 F.3d at 439. Yet the evidence submitted to Social Security is often different and may involve a formal hearing which is rarely required in ERISA proceedings. Hlinka v. Bethlehem Steel Corp., 863 F.2d 279, 287 (3rd Cir. 1988). Under Plaintiff's apparent theory, however, both the ERISA plan and the Court would be bound by the decision of a third party (Social Security) based on a different record than the one before the ERISA plan administrator.

Worse yet, Plaintiff's theory would give Social Security more authority over the determination of ERISA claims than the federal courts. While a federal court cannot overturn an ERISA plan's decision if it is reasonable (even if the court disagrees with the decision) Abnathya, 2 F.3d at 44-45, under Plaintiff's theory, the decision to deny benefits under an ERISA plan could never stand if Social Security reached a contrary decision.

In short, given the measure of deference that is afforded to a plan administrator's decision, an SSDI award is not dispositive of eligibility for benefits under an ERISA governed plan. Paramore v. Delta Air Lines, Inc., 129 F.3d 1446, 1452 n.5 (11th Cir. 1997); Anderson v. Operative Plasterers' and Cement Masons' Int'l Assoc. Local No. 12 Pension and Welfare Plans, 820 F. Supp. 384, 390 (C.D. Ill. 1992). Because Unum had such discretion, Plaintiff's allegations about an award of SSDI are insufficient to reverse the denial of benefits.

27

## V. CONCLUSION

For the reasons set forth above, Unum respectfully requests the Court to grant its motion for summary judgment, or for judgment on the papers.

Dated: July 25, 2006

STEVENS & LEE

By: _____
    Walter P. McEvilly, Jr.
    Attorney I.D. No. 660
    Kirk L. Wolgemuth
    Attorney Pa. I.D. 45792
    1105 North Market Street
    Seventh Floor
    Wilmington, DE  19801
    (302) 425-3300

    Attorneys for Defendant
    Unum Life Insurance Company of America

28